Good morning. May it please the Court. One second. So it's Ms. Sullivan. You've reserved three minutes for rebuttal. I have that right? Yes. Okay. So you may proceed. May it please the Court. Good morning. My name is Elizabeth Sullivan. I represent the petitioner, Dr. William Washington. The venue issue on appeal here is unusual. This is not the standard case where there's evidence of multiple acts occurring in the Southern District. Based on the evidence presented at trial, nothing happened in the Southern District that proves venue here. Dr. Washington was in Washington State. There was no evidence of co-conspirators doing anything in the Southern District or any invoices or payments coming through the Southern District. The government failed to establish a connection between Dr. Washington and the Southern District and the alleged crimes. The government attempts to resuscitate venue on appeal by relying on two telephone calls between Dr. Washington and a Proscauer lawyer. This doesn't say venue, and I'm going to take you through why, breaking it down by the two telephone calls. The first telephone call was in December of 2019, and it doesn't establish venue for three reasons. First, the Proscauer lawyer testified that Dr. Washington called him at work. The government presented no evidence of a reason why Dr. Washington would know or could reasonably foresee that calling the Proscauer lawyer back at work would be a call to the Southern District. The Proscauer lawyer didn't testify that he told Washington on the call where he was located. The government didn't ask him when he was on the stand. The government, now on appeal, tries to cobble it together by using phone records from a defense exhibit. Why isn't the area code enough to put him on notice? I mean, it's true, not everyone knows where 212 is, but that seems to go more to the weight of it than, you know, whether it proves it. Two points there, Your Honor. The first is that the area code cases that the government relies on all require something a little bit more than just a New York City Southern District area code. For example, the Mosquero-Prado case, the defendant gave the confidential informant area code within the Southern District of New York, and the defendant knew that the drug buyout issue was going to happen in the Southern District of New York. If you look at the other telephone cases, not necessarily related to area code specifically, the same pattern occurs where there's something more than just a telephone call. What about the phone calls in September and October? I thought there was testimony that Dr. Washington was asked about the origin of a call he made that, relating to getting information about the plan, where he was asked about the origin, and he stated, it's most likely it is coming from the plan. It would be New York, meaning he understood that the plan and its administrators were in New York. Isn't that enough of an inference to know that he understood this involved entities based in New York? So the plan, the evidence presented at trial said the plan was located in Williamsville, New York, which is near Buffalo in the Western District of New York. If I'm remembering the transcript correctly, that was a 9-1-7 call, and that 9-1-7 call is not specifically connected to SDNY, but he had an understanding that in connection with these events, he's dealing with people in New York State, at least, right? So why wouldn't the 2-1-2 put him on notice? And there are cases that say the area code should be sufficient to put someone on notice, that they're calling a particular area within a state. It's our argument that it's unreasonably speculative for somebody who lived his entire life across the country, thousands of miles away, to know what an area code associated with the Southern District of New York to be. But he knew that 9-4-6 was New York, upstate New York, a different area of New York, but he didn't know that 2-1-2 was within SDNY? I'm struggling with that. I guess that's why I'm asking. How do you know one area specifically, one part of New York, but not another? So he's a doctor. He works with the plan frequently. He knew what the plan phone number was, which was associated with the Western New York area code 7-1-6. The government asked him on the stand, do you recognize this number, 7-1-6 number? Dr. Washington said, yes, this is the plan's number. The government could have asked him, do you recognize what a 2-1-2 number is? They didn't do that. And so our argument is that it was unreasonably speculative for somebody in the Washington state to know what a 2-1-2 number is. And there has to be a little bit more than just that. Before you run out of time, could you address the government's waiver argument, the defendant failed to include this as a basis in his motion for acquittal? Yes, Your Honor. Our position is that Dr. Washington objected to the sufficiency of the government's evidence for venue prior to trial and during trial, and that alone is enough to specifically articulate an objection to venue. He raised it in his pre-trial motion to dismiss. He raised a general articulation of evidence. There's case law that says the argument has to be specifically articulated in the motion of acquittal. Your Honor, those cases are all counseled cases, and the standard there is that defense counsel has to specifically articulate the venue objection at the Rule 29. He was proceeding pro se, and there is no case requiring By his choice. He's proceeding pro se by his choice, right? And he was canvassed about that and presumably warned about the risks of proceeding pro se, which is precisely a risk such as this. Doctors shouldn't be acting like lawyers, and lawyers shouldn't be acting like doctors, because they may miss something. So the fact that there isn't a case pro se, how does that dispose of a pro se defendant having a waiver applied? There is case law in this circuit that says pro se defendants, though they have to follow the same rules and the same laws, are granted a little bit more leniency in the mechanical application of those rules and laws so that they don't waive important rights, such as their right to venue, which is protected constitutionally. All right. Well, you've reserved three minutes for rebuttal. Good morning, Your Honors, and may it please the Court. My name is Kai Skafari. I'm an assistant United States attorney. I represent the government in this appeal as I did at trial below. Judge, I'll start with the waiver point. Here, this Court has held for nearly half a century, going back to 1980, the Bramatico's case, that a venue objection must be specifically articulated in the Rule 29 papers as the Court raised venue issues during the course of the trial, but did not raise it in his Rule 29 papers. And courts in the past have held, this Court has held, that where defendants have raised it in cross-examination or at the instruction stage, that just bespeaks in a... The counsel argues that the cases are counseled cases, and here Dr. Washington was pro se. Judge, that's right. I mean, in addition to the point that, you know, Judge Caproni specifically had a forensic hearing and noted that Dr. Washington would possibly be forfeiting arguments if he did that, and that is at docket number 1296, pages 25 to 29. In addition to that, he had standby counsel. And in addition to that, this Court's clear that pro se defendants must nonetheless comply with substantive and procedural rules, and at most, they're permitted a liberal construction of their papers. And so here, if Dr. Washington in his Rule 29 papers had said anything about the geography of the calls or said the word venue, then there could possibly be a basis to liberally construe those papers. Here, he did not say a single word about that. Turning to the merits, I want to just clarify one thing on the record, and this is with respect to Dr. Washington's admission that he knew the plan was New York, and I'm looking at A, 1007 to 1008. Dr. Washington, I'm sorry, 1008 to 1009, Dr. Washington is asked about a 716 number, and this is at transcript site 5 through 10, and he's asked, are you familiar with what city that number, the 716, might be from? And he says, answer, I can't tell by looking at it. It's most likely, if it is coming from the plan, it would be New York. In other words, I don't recognize 716, but I know generally that if it's the plan, it's New York. A few lines down, and this is at the bottom of 1009, he's asked, Dr. Washington, October 3rd, at the bottom of the screen, I got a 917 number. Does that ring a bell? His answer, that was the plan. That was Rebecca. That was the number Melvin Eli gave to me. In other words, he did not recognize 716. New York. I'm sorry? New York. That's right, Judge. Hold on. New York could refer to the Western District of New York. Yes, Judge. And in the Tang Yuk case, Your Honor noted in the dissent that mentioning New York. Was it dissent? Yes, Your Honor. I wasn't going to point that out, but yes. Your Honor noted that New York wouldn't be sufficient, and in that case, there was a manufacturing problem as well. Nonetheless, the Court held that there was, especially on this standard, right, the question here is whether a rational jury, drawing all inferences in favor of the government, in the light most favorable, including in circumstantial evidence, could find by a preponderance that this was reasonably foreseeable. And this Court has noted in numerous cases, including the Tang Yuk case, that notice that a conspiracy, that criminal conduct occurring in the vicinity of the Southern District of New York could be sufficient here in addition to the general notion that this is New York, in addition to the idea that the 917 number, which is a New York City five boroughs number, there was specifically calls with a 212 number. And so here, it's not sort of like the Tang Yuk case or some of the other cases where there's a drug deal, where there were clear acts in this district, the 212 calls, in which Dr. Washington specifically was trying to prevent detection, the discovery of this conspiracy. And one thing I would note, Your Honor, with respect to this question of, and I know it didn't come up, of whether these calls in some ways furthered the objectives of the conspiracy or constituted sort of the acts in the commission of the crime, the answer is clearly yes. These calls occurred in December of 2019 and in March of 2020. The substance of these calls were whether the two NBA players were his patients, whether the services charged in the invoices were provided and so on. And there were clear lies. There's no question that these were not his patients. I know counsel brings up sort of a definition of what qualifies as a patient, et cetera. The trial record was replete. We had one of those players testify. He said clearly, I was not a patient. We had Dr. Washington's plan administrator testify. He testified that these were not his patients. So there's no question that there were lies on those calls. There's also no question that this clearly furthered the aims of the conspiracy, including by preventing its detection. And the reason for that, Your Honors, is the last, the second of the calls happens in March of 2020. After April 1st of 2020, Dr. Washington's clinic charged the players 177 times further. They continued to swipe the cards for months until July 10th of 2020. Nearly a third of the take in this case happened after those calls. And so there's a fair inference and more than a reasonable inference that a jury could have inferred that had Dr. Washington told the truth on those calls, this scheme would have been discovered and its aims would have been significantly obstructed. Unless the court has additional questions, the government would rest on its briefs. Thank you. And we'll hear from Ms. Sullivan for three minutes of rebuttal. I'd like to start with the infuriance prong. It's simply not true, first of all, as the government contends here that the subject of both calls were about patients. If we go to the December 2019 call, the government's theory is that Dr. Washington lied on the call about the accuracy of invoices to keep the scheme going. That's not close to what the government proved at trial. This is what the Proskauer attorney testified. He said that the, quote, goal of the call, end quote, was to have Dr. Washington, quote, describe what invoices from his practice would look like. The Proskauer lawyer didn't recall if he said anything to Dr. Washington about the plan. The Proskauer lawyer asked Dr. Washington administrative questions on invoices that look similar to the ones shown to the Proskauer lawyer in Government Exhibit 504, which is A1255, which I have here. Did the Proskauer lawyer testify that Dr. Washington told him that Eli and Palacio were his patients when they were not? On the second call, Your Honor, only. The first call was limited to these general invoice questions. The second call, the government contends that the question asked about the patients was a lie. The government called Mr. Eli as a witness, and he testified that he spoke to Dr. Washington on the phone, and Dr. Washington gave him medical advice for a preexisting knee condition. Regardless of anything that he testified to, this established that Dr. Washington rendered medical advice to Mr. Eli. This established a physician-patient relationship for this purpose, and Mr. Palacio didn't even testify. It's our position that the government's belated and futile redo attempt on venue here just doesn't work. As to waiver, at its core, this is a notice provision, and there is a pro se defendant here, and there is leniency required by pro se defendants from this court. As to standby counsel, the mandate for standby counsel was to not speak while the jury was present. Dr. Washington fully had the reins of his defense here. This was a pro se case. Unless there are any more questions, thank you.